**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**ROBERT J. REGISTER and**                                **PLAINTIFFS**
**CRYSTAL J. REGISTER**

**v.**                                       **Civil No. 1:23cv147-HSO-BWR**

**DESIGN 1 GROUP LLC,**
**CONNEXUS CREDIT UNION,**
**and SOLAR MOSAIC, LLC**                               **DEFENDANTS**

## <u>MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS CONNEXUS CREDIT UNION AND SOLAR MOSAIC, LLC'S MOTION [9] TO COMPEL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS, AND GRANTING DEFENDANT DESIGN 1 GROUP LLC'S MOTION [12] TO COMPEL ARBITRATION</u>

BEFORE THE COURT are Defendants Connexus Credit Union, Solar Mosaic, LLC, and Design 1 Group LLC's Motions [9], [12] to Compel Arbitration, which seek a Court order compelling Plaintiffs Robert J. Register and Crystal J. Register to submit their claims to arbitration and dismissing or staying this civil action pending final resolution of the arbitration. Plaintiffs have filed a Response [14], requesting that the Court deny the Motions [9], [12], or in the alternative that should the Court find arbitration warranted, it require Defendants to submit the claims to arbitration and pay all requisite fees. Defendants Connexus Credit Union and Solar Mosaic LLC have filed a Reply [15], and Defendant Design 1 Group LLC has filed a Joinder [17] to the Reply [15].

Having considered the Motions [9], [12], the related pleadings, the record, and relevant legal authority, the Court is of the opinion that Defendants' Motions [9], [12] should be granted, Plaintiffs should be compelled to arbitrate their claims against Defendants, and this case should be dismissed.

## I.   BACKGROUND

A.   Factual background

In 2021, Plaintiffs Robert J. Register and Crystal J. Register ("Robert" and "Crystal," or collectively "Plaintiffs") submitted an online inquiry regarding the purchase of a home solar energy system. Compl. [1] at 3. Responding to the inquiry, Thomas Nolan, a sales representative for Defendant Design 1 Group LLC ("Design 1"), contacted Plaintiffs and represented that the system would save them over $200.00 per month, and that, when coupled with tax incentives, this would offset the cost of the system itself. *Id.* On October 29, 2021, Crystal entered into a contract (hereinafter referred to as the "Loan Agreement") with Defendant Connexus Credit Union ("Connexus") to finance the purchase of a home solar energy system from Design 1. *Id.* at 4; *see also* Loan Agreement [14-3]. Under the terms of the Loan Agreement [14-3], Defendant Solar Mosaic, LLC was the "master servicer" for Connexus and received payments made on the loan on its behalf. Loan Agreement [14-3] at 12-13. The same day, Robert contracted with Design 1 to purchase the home solar energy system (hereinafter referred to as the "Scope of Work Agreement").[1] *See* Scope of Work Agreement [14-1].

---

[1] While Robert was the only signatory to the Scope of Work Agreement [14-1], both Plaintiffs were listed as "Customer" at the top of the Agreement [14-1]. Scope of Work Agreement [14-1] at 1.

The Loan Agreement [14-3] provided that Connexus would loan Plaintiffs $71,900.00 over 297 months at an annual percentage rate of 1.99 percent. Loan Agreement [14-3] at 9. Connexus was to disburse $43,140.00 initially and then disburse the remaining $28,760.00 upon completion of the system's installation. *Id.* Plaintiffs allege that they were to make their first payment on the loan by March 13, 2022, however, Connexus began to draft autopayments on February 11, 2022. Compl. [1] at 5.

The Loan Agreement [14-3] included an arbitration agreement, *see* Loan Agreement [14-3] at 18-21, which stated in relevant part that:

> [i]f either you or we elect to arbitrate a Claim rather than have a court (a judge or jury) decide the Claim, it will be resolved by individual (not class or class-wide) binding arbitration in accordance with the terms specified in this Arbitration Agreement.
>
> . . .
>
> If you do not reject this Arbitration Agreement and a Claim is arbitrated, neither you nor we will have the right to: (1) have a court or a jury decide the Claim; (2) engage in information-gathering (discovery) to the same extent as in court; (3) participate in a class action, private attorney general or other representative action in court or in arbitration; or (4) join or consolidate a Claim with claims of any other person. The right to appeal is more limited in arbitration than in courts and other rights in court may be unavailable or limited in arbitration.

*Id.* at 18 (emphasis removed). The arbitration agreement defined the term "we" to include Connexus and "third parties if [Crystal J. Register] assert[s] a Claim against such third parties in connection with a claim [she] assert[s] against [Connexus]." *Id.* A "Claim" included "any claim, dispute or controversy between [Crystal J. Register] and [Connexus], whether preexisting, present or future, which

3

arises out of or relates to the Loan Agreement, . . . [or] any product or service provided by [Connexus] or third parties in connection with [the] loan . . . ." *Id.* A "Claim" was also defined to have "the broadest meaning possible" and "includes dispute[s] based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity and claims for money damages and injunctive or declaratory relief." *Id.* With respect to payment of fees,

> [a]t your written request, we will pay all filing, hearing, and/or other fees charged by the administrator and arbitrator to [Crystal J. Register] for Claim(s) asserted by [Crystal J. Register] in an individual arbitration after [she] ha[s] paid an amount equivalent to the fee, if any, for filing such Claim(s) in state or federal court (whichever is less) in the judicial district in which [she] reside[s]. (If [Crystal J. Register] ha[s] already paid a filing fee for asserting the Claim(s) in court, [she] will not be required to pay that amount again). In addition, the administrator may have rules or procedures whereby [Crystal J. Register] may be responsible for a different amount and can seek a waiver of fees charged to [her] by the administrator and arbitrator. We will always pay any fees or expenses that we are required to pay by law or the administrator's rules or that we are required to pay for this Arbitration Agreement to be enforced.

*Id.* at 20.

In February 2022, Plaintiffs contacted Design 1 to inquire when installation of the home solar energy system would commence, and were told that permits were completed and installation would begin shortly. Compl. [1] at 5. On March 11, 2022, Plaintiffs checked again with Design 1 about the status of the installation, and were informed that it was awaiting permits. *Id.* Plaintiffs explained to the Design 1 representative that they had been informed that the permits had already been obtained. *Id.*

On March 24, 2022, Plaintiffs allegedly contacted Defendant Solar Mosaic, LLC ("Solar Mosaic") to cancel the loan because installation had not begun. *Id.* Solar Mosaic informed Plaintiffs that it contacted Design 1, which represented that Design 1 had been trying to contact Plaintiffs to set up the installation, and for this reason it would not cancel the loan. *Id.* Over the following months, Plaintiffs unsuccessfully attempted to cancel their loan, and contacted Design 1 and Solar Mosaic about their frustration at the alleged "runaround" they were receiving from the two entities. *Id.* at 6.

Design 1 installed the solar panels on Plaintiffs' property on June 1, 2022, however on June 13, 2022, the installation failed inspection. *Id.* On July 7, 2022, Plaintiffs submitted a complaint to the Better Business Bureau, which Design 1 responded to, placing the blame on supply chain issues, and stating that it would send a rebate check to Plaintiffs. *Id.* at 6-7. Plaintiffs assert that they never received a rebate check. *Id.* at 7. On July 20, 2022, Design 1 electricians arrived at Plaintiffs' home, unscheduled, to perform repairs, but Design 1 had allegedly failed to schedule an inspection of the system. *Id.* Plaintiffs claim they scheduled an inspection themselves, at their own expense, for July 29, 2022, and the work performed up to that point passed. *Id.* But, the system still required approval from the utility company, and a conservation package had not been delivered. *Id.*

According to the Complaint [1], Design 1 next contacted Plaintiffs on October 6, 2022, stating that it could not deliver a conservation package due to supply issues and would instead provide additional solar panels, without offering any explanation

as to how the costs of the solar panels compared to a conservation package and without adjusting the loan amount. *Id.* On October 14, 2022, Plaintiffs received an inquiry from Solar Mosaic as to whether the system was operational, to which Plaintiffs responded in the negative. *Id.* at 7-8; *see also* Ex. [1-3]. Despite this, Plaintiffs allege that Solar Mosaic sent them a "Loan Closing Certificate" on November 14, 2022, indicating that installation was complete, and that Solar Mosaic had disbursed the remining payment balance of $28,760.00 to Design 1. Compl. [1] at 8; *see also* Ex. [1-4]. In response, Plaintiffs informed Solar Mosaic that installation was not complete. Compl. [1] at 8. Plaintiffs state that despite trying for many additional months, they were unable to obtain a fully functioning solar energy system. Compl. [1] at 9.

B.    Procedural history

Plaintiffs filed suit on June 16, 2023, alleging among other things that "Connexus and Design 1 were conspiring to defraud Plaintiffs." Compl. [1] at 10. The Complaint [1] advances six counts against Design 1, Connexus, and Solar Mosaic (collectively "Defendants"). *Id.* at 10-18. Counts I and II allege that all Defendants defrauded Plaintiffs, *id.* 10-13, and Counts III and IV assert breach of contract claims against Design 1 and Connexus, *id.* at 13-14. In Count V, Plaintiffs contend that Connexus violated 15 U.S.C. § 1638 of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq. *Id.* at 14-16. Count VI alleges that all Defendants "willfully and intentionally conducted and participated, directly and indirectly, in a pattern of racketeering activity related to an enterprise" in violation of the

6

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. *Id.* at 16-18.

Defendants Connexus and Solar Mosaic have filed a Motion [9] to Compel Arbitration and to Dismiss or Stay Proceedings, *see* Mot. [9], and Design 1 has filed its own Motion [12] to Compel Arbitration, *see* Mot. [12]. Plaintiffs oppose both Motions [9], [12], but request in the alternative that if the Court grants the Motions [9], [12], it require Defendants to cover the costs of arbitration. *See* Resp. [14] at 2.

1.   <u>Defendants' Motions [9], [12] to Compel Arbitration</u>

Defendants argue that the arbitration agreement extends to all of Plaintiffs' claims against them because the "arbitration agreement requires the parties to arbitrate 'any claim, dispute or controversy' between the parties and Related Parties 'which arises out of or relates to the Loan Agreement[.]'" Mem. [10] at 5, 9-10; Mem. [13] at 2. Defendants assert that Crystal is bound by the Loan Agreement [14-3] as a signatory, and that Robert is bound as a third-party beneficiary. Mem. [10] at 10-11; Mem. [13] at 2.  Design 1 maintains that it is also able to compel arbitration under the Loan Agreement [14-3] because although it was not a signatory, Plaintiffs' "claims against Design 1 are directly related to the product and services financed by Connexus Loan Agreement." Mem. [13] at 4.

2.   <u>Plaintiffs' Response [14]</u>

Plaintiffs respond that the arbitration agreement is void due to fraud in the inducement of the Loan Agreement [14-3]. Resp. [14] at 5-6. Specifically, they argue that Defendants misrepresented the costs of the loan to Crystal "by concealing the

finance charge, utiliz[ing] bait-and-switch tactics in providing certain goods that were promised, and coerc[ing] Crystal Register into indebting herself to Connexus Credit Union by more than $70,000." *Id.* at 5. In Plaintiffs' view, had Defendants not falsely represented the Loan Agreement's [14-3] costs, Crystal "would not have executed the Loan Agreement and would not be a party to the arbitration agreement." *Id.* at 5. Plaintiffs further contend the arbitration agreement is procedurally unconscionable because they, and in particular Robert, were not on notice of the arbitration agreement's inclusion in the Loan Agreement [14-3]. *Id.* at 9-10.

Plaintiffs next assert that Robert, Design 1, and Solar Mosaic were not signatories to the Loan Agreement [14-3], and thus arbitration cannot be compelled as to claims involving these parties. *Id.* at 6-8. Specifically, Plaintiffs argue that as to Robert's claims against Design 1, the contract between them makes no mention of arbitration. *Id.* at 8; *see also* Scope of Work Agreement [14-1]. As such, should the Court find an arbitration agreement exists in the Loan Agreement [14-3], the agreement cannot not be enforced against Robert by any of the Defendants, "but especially as to his claims against Design 1 because the claims arise under the Scope of Work contract[.]" Resp. [14] at 8. Plaintiffs further posit that Crystal's claims against Design 1 are not subject to the Loan Agreement's [14-3] arbitration agreement because each of the claims against Design 1 are independent of, and do not relate to, the Loan Agreement. *Id.* at 9.

3.   <u>Defendants' Reply [15]</u>

In Reply [15], Defendants contend that Plaintiffs' fraudulent inducement argument fails because claims that an entire contract was fraudulently induced do not prevent the enforcement of an arbitration agreement; only specific allegations of fraudulent inducement to sign the arbitration agreement itself would support such a claim. Reply [15] at 4 (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010)). As to Robert's claims, Defendants maintain that he is a third-party beneficiary to the Loan Agreement [14-3] and thus can be bound by its arbitration agreement, *id.* at 5, and that even if Robert were not suing for breach of the Loan Agreement [14-3], he could nevertheless be compelled to arbitrate on estoppel grounds because he is bringing claims related to the Loan Agreement [14-3] by "alleging a fraudulent scheme[,]" *id.* at 6.

Defendants next argue that the Loan Agreement [14-3] is not procedurally unconscionable as to Crystal because, under Mississippi law, she had a duty to read the Loan Agreement [14-3] before signing it. *Id.* at 7-8 (quoting *Begole v. N. Miss. Med. Ctr., Inc.*, 761 F. App'x 248, 251 (5th Cir. 2019)). As to Robert, Defendants take the position that Plaintiffs' unconscionability argument is nothing more than an attempt to circumvent the fact that Robert can be bound to the arbitration agreement as a third-party beneficiary. *Id.* at 8. As to Design 1, Defendants contend that the arbitration agreement includes third parties if Plaintiffs raise a claim against such third parties in connection with the Loan Agreement [14-3], as is the case here. *Id.* at 9-10.

With respect to Plaintiffs' request that the Court order Defendants to cover the fees of the arbitration, Defendants state that such an order is unnecessary, because under the arbitration agreement it is Plaintiffs' burden to initiate arbitration, and that "pursuant to the Loan Agreement, [Solar] Mosaic will promptly pay fees due when the arbitration is properly commenced by Plaintiffs." *Id.* at 9 n.1.

## II.  DISCUSSION

A.  Relevant legal authority

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., provides that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 of the FAA creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA requires courts to enforce arbitration agreements according to their terms. *Rent-A-Ctr., W., Inc.*, 561 U.S. at 67.

A court generally follows a two-step inquiry when resolving a motion under the FAA, first considering "whether the parties formed any arbitration agreement at all," and next determining whether the claims in question fall within the scope of that arbitration agreement. *Matter of Willis*, 944 F.3d 577, 579 (5th Cir. 2019), *cert. denied sub nom. Willis v. Tower Loan of Mississippi, LLC*, 140 S. Ct. 2828 (2020) (quotation omitted). Whether a valid arbitration agreement was formed is

determined according to state contract law.[2] *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 208 n.2 (5th Cir. 2012); *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008). If both questions are answered in the affirmative, a court must then consider whether any legal constraints external to the agreement foreclose arbitration. *See Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006).

"[F]ederal courts have held that so long as there is some written agreement to arbitrate, a third party may be bound to submit to arbitration." *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006). "Six theories for binding a nonsignatory to an arbitration agreement have been recognized: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary." *Id.* (quotation omitted). Based upon the parties' arguments, only the estoppel and third-party beneficiary doctrines appear to be implicated here. *See* Mem. [10] at 6-10. "[T]he third-party beneficiary doctrine prevents the intended beneficiary of a contract from avoiding the terms of the contract." *Janvey v. Alguire*, 847 F.3d 231, 243 (5th Cir. 2017). "It does not apply when a person merely is directly affected by the parties' conduct or has a substantial interest in a contract's enforcement[,]" but instead applies only "if the intent to make someone a third-party beneficiary is clearly written or evidenced in the contract." *Id.* (quotation omitted).

---

[2] In Mississippi, the elements of a contract are: "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 734 (Miss. 2019) (quotation omitted).

Courts have also "applied direct benefits estoppel to bind a non-signatory to an arbitration agreement when the non-signatory knowingly exploits the contract containing the arbitration clause and obtains a direct benefit from that contract." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010). A nonsignatory has knowledge of the arbitration agreement if he "had actual knowledge of the contract containing the arbitration clause." *Id.* Courts have applied intertwined claims estoppel to "compel[] arbitration when a nonsignatory defendant has a close relationship with one of the signatories and the claims are intimately founded in and intertwined with the underlying contract obligations." *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 610 (5th Cir. 2016) (quotation omitted); *see also Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (holding that a district court did not abuse its discretion in compelling arbitration where the plaintiff's "allegations and claims are intertwined with, and dependent upon, the [contract containing an arbitration agreement]"). This doctrine "applies when there is a tight relatedness of the parties, contracts, and controversies." *Hays*, 838 F.3d at 610 (quotation omitted).

B. <u>Whether a valid arbitration agreement exists</u>

The formation of an arbitration agreement is governed by state law. *Carey*, 669 F.3d at 208 n.2. Four of the elements–two or more contracting parties, consideration, legal capacity, and specificity of terms–are easily satisfied by a plain reading of the arbitration provision. *See* Loan Agreement [14-3] at 18-21. There are at a minimum two parties to the arbitration provision, Crystal and Connexus. *See*

Loan Agreement [14-3] at 18-21. The promise of each party to arbitrate a potential claim satisfies the consideration requirement, *see Covenant Health & Rehab. of Picayune, LP v. Lumpkin ex rel. Lumpkin*, 23 So. 3d 1092, 1096-97 (Miss. Ct. App. 2009), and the arbitration agreement sufficiently defines its material terms and how the arbitration is to be conducted by the parties, *see* Loan Agreement [14-3] 18-21. None of the parties have argued or produced evidence showing any incapacity to contract. *See Durant Healthcare, LLC v. Garrette*, 362 So. 3d 64, 72 (Miss. Ct. App. 2022), *reh'g denied* (Apr. 4, 2023), *cert. denied*, 365 So. 3d 982 (Miss. 2023) ("The law presumes that a person is sane and mentally capable of entering into a contract." (citing *Frierson v. Delta Outdoor Inc.*, 794 So. 2d 220, 224 (Miss. 2001)).

It is the two remaining elements–mutual assent and the absence of a legal restraint–that are at issue. *See generally* Mem. [10]; Mem. [13]; Resp. [14]; Reply [15]. Plaintiff argues the Loan Agreement [14-3] is unconscionable on multiple grounds, including fraudulent inducement, and that Robert, Design 1, and Solar Mosaic did not assent to the arbitration provision. *See* Resp. [14] at 5-11.

C.    Whether the arbitration provision was fraudulently induced

The parties do not appear to dispute the existence of the arbitration provision within the Loan Agreement [14-3]; instead Plaintiffs argue that the Loan Agreement [14-3] as a whole was fraudulently induced, Resp. [14] at 5-6, rendering the arbitration agreement substantively unconscionable by extension, *id.* at 9-10. However, this is irrelevant to "determin[ing] whether the arbitration agreement at issue is enforceable." *Rent-A-Ctr., W., Inc.*, 561 U.S. at 70. "[A]s a matter of

substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). "Application of the severability rule does not depend on the substance of the remainder of the contract." *Rent-A-Ctr., W., Inc.*, 561 U.S. at 72. Under 9 U.S.C. § 2, unless a party challenges the validity of the arbitration agreement itself, the Court "must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* (citing 9 U.S.C. § 2).

Here, Plaintiffs challenge the validity of the Loan Agreement [14-3] as a whole, at no point contesting the validity of the arbitration agreement itself. *See generally* Resp. [14]. A review of the terms of the arbitration agreement evidences a clear and unmistakable intent to arbitrate claims arising under the Loan Agreement [14-3]. *See* Loan Agreement [14-3] at 18-20. Plaintiffs' contention that alleged fraudulent inducement in entering the Loan Agreement [14-3] precludes enforcement of the arbitration provision is unavailing. *See Rent-A-Ctr., W., Inc.*, 561 U.S. at 70-72.

D.    <u>What claims fall within the scope of the arbitration agreement</u>

Under the arbitration agreement,

A "Claim" is any claim, dispute or controversy between you and us, whether preexisting, present or future, which **arises out of or relates to the Loan Agreement**, any prior agreement you have had with us, the events leading up to your loan (for example, any disclosures, advertisements, promotions or oral or written statements made by us), **any product or service provided by us or third parties in connection with your loan**, any transaction conducted with us, the

14

collection of amounts you owe us and the manner of collection or the relationship between you and us.

The term "Claim" has the broadest possible meaning. It includes initial claims, counterclaims, cross-claims, third-party claims and federal, state, local and administrative claims and claims which arose before the effective date of this Arbitration Agreement. It also includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity and claims for money damages and injunctive or declaratory relief.

Loan Agreement [14-3] at 18 (emphasis added).

The Fifth Circuit has held that language such as "any disputes arising out of or related to this Agreement" constitutes a broad agreement to arbitrate. *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 303-04 (5th Cir. 2021); *see also, e.g.*, *Landry's, Inc. v. Ins. Co. of the State of Pennsylvania*, 4 F.4th 366, 371 (5th Cir. 2021) (holding that the words "arising out of . . . connote breadth"); *The Rice Co. (Suisse), S.A. v. Precious Flowers Ltd.*, 523 F.3d 528, 532 (5th Cir. 2008) (stating that "all disputes arising out of this contract shall be arbitrated in London" was a broad arbitration clause); *Sedco v. Pemex*, 767 F.2d 1140, 1144 n.8, 1145 (5th Cir. 1985) (finding that the clause "[a]ny dispute or difference between the parties arising out of this Charter" is broad). Broad arbitration agreements are "capable of expansive reach" and "are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998).

15

The foregoing language reflects a broad agreement to arbitrate, covering all claims that could potentially arise out of the Loan Agreement [14-3]. As to the two signatories, Connexus and Crystal, the arbitration agreement clearly encompasses all claims between them in this case. *See* Loan Agreement [14-3] at 18-21. The plain language of the arbitration agreement also covers the claims between the third-parties, Robert, Design 1, and Solar Mosaic. This is because the arbitration agreement defines "'we,' 'us[,]' and 'our'" as referring to "third parties if [Crystal] assert[s] a Claim against such third parties in connection with a Claim [Crystal] assert[s] against [Connexus]." Loan Agreement [14-3] at 18. Both Design 1 and Solar Mosaic fall within this definition, as Plaintiffs' claims against them arise out of or are connected to the Loan Agreement [14-3] with Connexus. *See* Compl. [1] at 10-18.

As to Robert, who did not sign the Loan Agreement [14-3], the third-party beneficiary and direct benefits estoppel doctrines compel arbitration of his claims. *See Hellenic Inv. Fund, Inc.*, 464 F.3d at 517. Robert was a third-party beneficiary not merely because he benefited from or was directly affected by the Loan Agreement [14-3], *see Janvey*, 847 F.3d at 243, but also because the Loan Agreement [14-3] itself evidences a clear intent to make Robert a third-party beneficiary, *see* Loan Agreement [14-3] at 5, 7, 24. The purpose of the loan was to pay for the installation of the home solar energy system, which Robert contracted for when he signed the Scope of Work Agreement [14-1]. *See id.* at 5, 7; Scope of Work Agreement [14-1] at 1-2. That Agreement [14-1] clearly reflected a sales price

16

equal to the amount Connexus loaned Crystal. *See* Scope of Work Agreement [14-1] at 1; Loan Agreement [14-3] at 7. The Scope of Work Agreement [14-1] further stated that the sale of the home solar energy system would be financed, Scope of Work Agreement [14-1] at 1, and the Loan Agreement [14-3] stated that its purpose was to pay Design 1 for the home solar energy system, Loan Agreement [14-3] at 7, 12. Additionally, Robert was listed as the account holder for the account from which the monthly loan payment to Solar Mosaic and Connexus was to be drawn. *Id.* at 24. In sum, "the intent to make [Robert] a third-party beneficiary is clearly . . . evidenced in the contract[,]" *Janvey*, 847 F.3d at 243, and his claims fall within the scope of the arbitration agreement.

Even if Robert were not a third-party beneficiary, the arbitration agreement could still be enforced against him under a theory of direct benefits estoppel. *See Noble Drilling Servs., Inc.*, 620 F.3d at 473. Plaintiffs do not appear to dispute that Robert had actual knowledge of the contract containing the arbitration clause, *see generally* Resp. [14], instead taking the position that he was not on notice of the arbitration agreement specifically and did not consent to the Loan Agreement, *see id.* at 7-8. This is not the standard; the question is whether Robert had actual knowledge of the Loan Agreement [14-3] as a whole, not the arbitration provision itself. *See Noble Drilling Servs., Inc.*, 620 F.3d at 473. For reasons similar to those which make Robert a third-party beneficiary to the Loan Agreement [14-3], the evidence shows he also possessed actual knowledge of the Loan Agreement [14-3]. Loan Agreement [14-3] at 7, 12, 24. For purposes of the estoppel analysis, the

question becomes whether Robert "exploit[ed] the contract containing the arbitration clause and obtain[ed] a direct benefit from that contract." *Noble Drilling Servs., Inc.*, 620 F.3d at 473. The record reflects that he did so, as the loan was utilized to pay for the installation of the home solar energy system for which he contracted with Design 1. Thus, even if Robert did not qualify as a third-party beneficiary, the arbitration provision found in the Loan Agreement [14-3] would still be enforceable against him on a theory of direct benefits estoppel.

In sum, the Loan Agreement [14-3] contains a broad arbitration agreement that encompasses all claims brough by Plaintiffs in this action, so long as there is not an external legal constraint preventing enforcement. The element of mutual assent is satisfied for the same reasons.

E.     Whether an external legal constraint prevents enforcement

Plaintiffs first assert that the arbitration agreement is procedurally unconscionable because they lacked notice of its existence. *See* Resp. [14] at 9-10. Second, they contend that under basic contract law, Design 1 and Solar Mosaic cannot enforce the arbitration agreement because they are not parties to the Loan Agreement [14-3]. *Id.* at 6-8.

1.     No legal constraints exist preventing enforcement against Plaintiffs

Plaintiffs' notice argument is unavailing as to Crystal because she had a duty to read the Loan Agreement [14-3] before signing it. *See Begole*, 761 F. App'x at 251 (holding that under Mississippi law, "parties to a contract have an inherent duty to read the terms of the contract prior to signing" (quoting *MS Credit Ctr., Inc. v.*

*Horton*, 926 So. 2d 167, 177 (Miss. 2006))). "Moreover, knowledge of the contents of a contract will be imputed to a contracting party even though she did not read the contract before signing it." *Smith v. Union Nat'l. Life Ins. Co.*, 286 F. Supp. 2d 782, 788 (S.D. Miss. 2003). Crystal signed the Loan Agreement [14-3] containing the arbitration provision, *see* Loan Agreement [14-3] at 21, and Plaintiffs have not argued that she rejected the arbitration agreement within the time permitted, *see generally* Resp. [14].  The arbitration agreement is plainly enforceable against Crystal.

As for Robert, for the same reasons his claims fall within the scope of the arbitration agreement, there are no legal constraints to enforcement of the arbitration agreement against him. Under both the third-party beneficiary and the direct benefits estoppel doctrines, the arbitration agreement is enforceable against Robert. *See Hellenic Inv. Fund, Inc.*, 464 F.3d at 517.

2.  <u>No legal constraint prevents Connexus, Design 1, and Solar Mosaic from enforcing the arbitration agreement</u>

Plaintiffs maintain that Design 1 and Solar Mosaic cannot enforce the arbitration agreement because they are not signatories. Resp. [14] at 6-8. However, the intertwined claims doctrine allows for enforcement by nonsignatory defendants when a plaintiff brings claims against nonsignatories that are closely related to those brought against signatory defendants. *See Grigson*, 210 F.3d at 527; *Hays*, 838 F.3d at 610.

Here the doctrine applies because Plaintiffs' claims against Design 1 and Solar Mosaic arise out of the Loan Agreement [14-3] and Scope of Work Agreement

[14-1], and are so closely related to those against Connexus arising from the Loan Agreement [14-3] that they are intertwined. *See generally* Compl. [1]. Notably, Plaintiffs allege that Connexus and Design 1 conspired to defraud them by having them enter into the Loan Agreement [14-3]. *See id.* at 10. Plaintiffs also bring a RICO claim against all Defendants, alleging that they "devised a scheme to bypass required Truth-in-lending disclosures" and "willfully and intentionally conducted and participated, directly and indirectly, in a pattern of racketeering activity related to an enterprise in violation of 18 U.S.C. §1962(c)." *Id.* at 16-18. These facts distinguish this case from *Realty Trust Group, Incorporated v. Ace American Insurance Company*, which found that the intertwined claims doctrine was not applicable because the plaintiffs in that case did "not affirmatively plead conspiracy as between the signatory and nonsignatory Defendants." No. 1:07CV573-HSO-JMR, 2007 WL 4365352, at *4 (S.D. Miss. Dec. 11, 2007).

Instead, the facts here more closely align with those in *Mississippi Fleet Card, L.L.C. v. Bilstat, Incorporated*, where a court within this District found that intertwined claims estoppel applied when all of the plaintiff's claims against nonsignatory defendants presumed the existence of the contract containing the arbitration agreement and otherwise alleged "concerted misconduct" by both the nonsignatory and signatory defendants. 175 F. Supp. 2d 894, 900-01 (S.D. Miss. 2001). Here, a number of Plaintiffs' allegations against Defendants relate to the existence of the Loan Agreement [14-3] and to concerted conduct by all of them. *See generally* Compl. [1]. For instance, Count I asserts that Design 1 fraudulently

induced Plaintiffs to enter into the Loan Agreement [14-3], Compl. [1] at 10-11, while Count II pleads a similar claim against Connexus and Solar Mosaic, also alleging that these two Defendants were "complicit in the fraud committed by Design 1[,]" *id.* at 11-13. And, as already stated, Count VI alleges that all Defendants together engaged in a racketeering scheme in violation of RICO. *Id.* at 16-18.

The only Count that arguably is not intertwined with Plaintiffs' claims against Connexus is Count III, *see* Resp. [14] at 7-9, which asserts that Design 1 breached its contract to install the solar energy system, *id.* at 13-14. However, this claim also appears to be intertwined with the Loan Agreement, as Plaintiffs allege that "[a]s a result of Design 1's breaches of contract, the Plaintiffs have been saddled with a home energy system that does not work as advertised *and a substantial debt to Connexus.*" Compl. [1] at 13 (emphasis added). Additionally, Plaintiffs included among the reasons Design 1 breached its contract that "[*t*]*he loan costs* were in excess of the amounts agreed to by the borrowers;" "[t]he use of change orders by Design 1 was intended to replace high-cost products with lower cost items for *Design 1 to make additional money off of the loan* without disclosing these funds;" and "Design 1 falsely represented to Solar Mosaic that it had completed installation of the solar energy system *to obtain the second disbursements of funds prematurely.*" *Id.* (emphasis added).

The pleadings reflect a "tight relatedness of the parties, contracts, and controversies" between Plaintiffs' claims against Design 1 and Solar Mosaic, and

those against Connexus. *Hays*, 838 F.3d at 610 (quotation omitted). Thus, all three Defendants may enforce the arbitration agreement against Plaintiffs.

F.    Dismissal is appropriate

Finally, because all of Plaintiffs' claims are subject to arbitration, the Court will dismiss the action rather than issuing a stay. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); *see also Direct Biologics, L.L.C. v. McQueen*, 63 F.4th 1015, 1020 (5th Cir. 2023) ("Fifth Circuit precedent . . . holds that where all the plaintiff's claims must be arbitrated, dismissal rather than a stay pending arbitration is appropriate." (citing *Alford*, 975 F.2d at 1164)).

## III.  CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result. Defendants' Motions [9], [12] to Compel Arbitration should be granted.[3]

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendants Connexus Credit Union, Design 1 Group LLC, and Solar Mosaic LLC's Motions [9], [12] to Compel Arbitration are **GRANTED**, and Plaintiffs Robert J. Register and Crystal J. Register are compelled to arbitrate their claims against Defendants.

---

[3] Plaintiffs also request the Court direct Defendants to cover the cost of arbitration. The Court sees no need to address this issue because Defendants have agreed to pay the cost of arbitration "when the arbitration is properly commenced by Plaintiffs." Reply [15] at 9 n.1.

**IT IS, FURTHER, ORDERED AND ADJUDGED**, that, this civil action is **DISMISSED**.

**SO ORDERED AND ADJUDGED**, this the 22nd day of April, 2024.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE